## Taylor & McCoy Coal & Coke Company, Appellant, *v.* Hartman.

*Mines and mining—Coal lease—Option to lease—Equity—Discovery.*

Where the lessee of an upper vein of coal who has the option to purchase or lease a lower vein "on terms as favorable as may be offered bona fide by any other person or persons," has defeated the consummation of a lease to another party, whose name with the terms offered had been furnished to him, by setting up a claim for the coal, he cannot thereafter when another offer is made to the owner, and the terms of the offer is communicated to him, compel the owner by bill in equity to reveal the name of the person who made the offer.

Argued April 20, 1908.    Appeal, No. 386, Jan. T., 1907, by plaintiff, from decree of C. P. Blair Co., Equity Docket C., No. 492, dismissing bill in equity in case of The Taylor & McCoy Coal & Coke Company v. Jesse L. Hartman, Executor of James Denniston, deceased, Jesse L. Hartman, Trustee of Sarah B. Folkers et al.    Before MITCHELL, C. J., FELL, BROWN, POTTER and STEWART, JJ.    Affirmed.

Bill in equity for discovery.    Before BELL, P. J.
The opinion of the Supreme Court states the case.

*Error assigned* was decree dismissing the bill.

*O. H. Hewit,* for appellant, cited : Winton's App., 111 Pa. 387 ; Guffey v. Clever, 146 Pa. 548 ; People's Street Ry. Co. v. Spencer, 156 Pa. 85 ; Kerr v. Day, 14 Pa. 112 ; Sylvester v. Born, 132 Pa. 467.

*A. V. Dively,* of *Dively & Dively,* for appellees, cited : Hoch v. Bass, 133 Pa. 328.

OPINION BY MR. JUSTICE FELL, June 23, 1908 :

A statement in detail of the facts is essential to a proper understanding of the relation of the parties at the time the bill was filed.    In 1887 Dennison and McLanaghan were the owners of a tract of some 600 acres of land underlaid with two

veins of coal, the upper of which was known as the Lemon vein and the lower as the Miller vein.   They leased the Lemon vein to Taylor & McCoy, whose rights have been acquired by the plaintiff.   The lease contained the following clause: " In case the lessors desire to sell or lease the Miller vein, the lessees shall have the option to purchase or lease the same, on terms as favorable as may be offered bona fide by any other person or persons."   On December 9, 1902, the defendants, who are the heirs and legal representatives of Dennison and the owners of four-fifths of the land, notified the plaintiff that they had a bona fide offer to lease their interest in the Miller vein.   The notice set out in detail the following terms of the offer : the time the lease was to run, the royalty to be paid, the minimum amount of coal to be mined or paid for whether mined or not; the obligation to operate the mine to its full capacity, the proportions in which the cost of sinking a shaft should be borne and the manner in which the lessor's portion should be paid. It ended with this statement : " Under your contract you have the right to lease the Miller vein on terms as reasonable as may be offered by any person.   You will please inform us if you will lease the Miller vein on the above terms."

On December 12, 1902, the receipt of this notice was acknowledged by the defendants by letter in which it was stated that the matter would be given consideration at as early a date as possible.   On January 12, 1903 the defendants wrote calling attention to the notice of December 9, and the plaintiff's reply thereto, and notifying it that, unless the terms of the proposed lease were accepted by January 19, the plaintiff's right to it would be considered forfeited.   After January 19, negotiations were resumed with the party who had desired a lease, but were abandoned by him because of information received from the plaintiff that it claimed a right under its option.   On November 14, 1903, in reply to a letter from the defendants threatening suit for the plaintiff's interference to prevent a lease to another party the plaintiff wrote asking the name of the party from whom an offer had been received in order that it might satisfy itself by evidence other than the mere statement of the defendants that a bona fide offer had been made by reliable parties.   This information was promptly given.   Upon application by the plaintiff to the party named

it was informed that a proposition to lease had been made by the defendants, but that nothing definite had been done because they could not lease the whole interest. On March 1, 1904, the defendants wrote stating that a party desiring to lease their interest had written them that it had been informed by the plaintiff that it would not permit a lease to be made, and notifying the plaintiff that, if this interference caused a loss of this second opportunity to lease, it would be held answerable in damages. In reply to this letter the plaintiff asked for an outline in detail of the terms of the proposed lease and the name of the lessee in order that it might decide whether it would take the lease itself or allow another to take it. The defendants replied that they had no hesitation in telling the exact terms of the lease and gave the amount of royalty per ton and the minimum amount to be mined each year, but refused to name the proposed lessee for the reason that on a former occasion the plaintiff had demanded the name of the lessee and on being informed of it had notified him that it would not permit a lease to be made to him. A bill was then filed by the plaintiff, the prayers of which were for an order requiring the disclosure of the name of the proposed lessee and the terms in full of the proposed lease, and for an injunction restraining the defendant from leasing the Miller vein until these disclosures had been made and the plaintiff had been given a reasonable time thereafter in which to accept the lease.

The bill was dismissed for the reason that it would be inequitable to enjoin the defendants because of the lapse of time; the change of parties; the practical difficulty of reaching an understanding with a proposed lessee as to the numerous details of a lease and then holding the matter in abeyance until the plaintiff should elect to accept or decline a lease on the same terms; and the refusal or neglect of the plaintiff to act upon the notice of December 9, 1902, followed by the assertion of its claim to the coal, by which the consummation of a lease to another party had been prevented.

The situation was one that presented many practical difficulties if not met in a spirit of entire fairness by the parties. It was the defendants' interest to lease the coal and derive an income from it, and it was the plaintiff's interest to delay any action on its option until the upper vein of coal was ex-

hausted and it had use for the lower vein.    It was in its power practically to prevent the lease to another party by the continued assertion of its right to lease.    It was not bound to act until notified by the defendants and furnished with a statement of the terms offered by any other person.    The notification of December 9, 1902, was a compliance with the agreement, and the failure after a reasonable time to accept might have been held as a waiver of the plaintiff's right.    It was not, however, so regarded by the defendants, who continued to recognize the plaintiff's right and made a second offer on March 7, 1904.    If the plaintiff desired fuller information as to the terms of the lease referred to in this offer, it should have asked for it, and, until it had asked and been refused, it was not in a position to maintain its bill.    It was not its right under the circumstances to demand the disclosure of the name of the lessee.

The decree is affirmed at the cost of the appellant.